UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

PETER CANDELARIO,

    Plaintiff,

v.                                   Case No. 5:19-cv-142-TKW/MJF

JOSEPH SIMS,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Defendant Joseph Sims moved to dismiss this *Bivens* action based on Plaintiff Peter Candelario's failure to exhaust his administrative remedies. (Doc. 18). Candelario responded in opposition. (Doc. 21). For the reasons set forth below, the undersigned recommends that Sims's motion to dismiss be granted.[1]

**I.    Background**

On October 26, 2018, Candelario initiated this civil action pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971). Candelario is suing only Defendant Joseph Sims, in his individual capacity and his official capacity as a Bureau of

---

[1] This case was referred to the undersigned to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b).

Prisons correctional officer, for a violation of his Eighth Amendment right to be free of cruel and unusual punishments. Specifically, Candelario asserts that Sims physically and sexually assaulted him while Candelario was incarcerated at Federal Correctional Institution Marianna. Candelario states that this physical and sexual assault resulted in significant damage to Candelario's anal cavity. Candelario seeks compensatory and punitive damages. (Doc. 1 at 7). Sims moves to dismiss this action and argues that Candelario failed to exhaust his administrative remedies.

**II.     Discussion**

    **A.     The PLRA's Exhaustion Requirement**

Under the Prison Litigation Reform Act a prisoner may not file a *Bivens* action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Alexander v. Hawk*, 159 F.3d 1321, 1323-24 (11th Cir. 1998). This exhaustion requirement applies to all inmate suits concerning prison conditions, whether they involve general circumstances or particular episodes, whether they allege excessive force or some other wrong, and whether they seek injunctive relief, monetary damages, or both. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002).

Exhaustion of administrative remedies serves two main purposes. First, it protects administrative agency authority in that it gives an agency the initial opportunity to correct its own mistakes with respect to the programs it administers

before it is haled into federal court. Second, it promotes efficiency in that claims generally can be resolved more quickly and economically in proceedings before an agency than in litigation in federal court. *Woodford v. Ngo*, 548 U.S. 81, 88-89, 126 S. Ct. 2378, 2384-85 (2006).

Exhaustion of available administrative remedies is a mandatory pre-condition to filing a federal action against federal agencies and federal employees sued in their official capacities. *See Booth v. Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819, 1824 (2001) ("The 'available' 'remed[y]' must be 'exhausted' <u>before</u> a complaint under § 1983 may be entertained.") (emphasis added); *see also Porter*, 534 U.S. at 524-25, 122 S. Ct. at 988 ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."). "[T]he PLRA exhaustion requirement requires <u>proper</u> exhaustion." *Woodford v. Ngo*, 548 U.S. at 93, 126 S. Ct. at 2387 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91, 126 S. Ct. at 2386; *see Jones v. Bock*, 549 U.S. 199, 218, 127 S. Ct. 910, 922 (2007) ("[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance

with the applicable procedural rules,' . . . —rules that are defined not by the PLRA, but by the prison grievance process itself."). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218, 127 S. Ct. at 922.

### B. Procedure for Adjudicating a "Failure to Exhaust" Defense

A plaintiff's failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of establishing. *See Jones*, 549 U.S. at 216, 127 S. Ct. at 921 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."). In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the PLRA. The defense of failure to exhaust should be treated as a matter in abatement. *See id*. at 1374. "This means that procedurally the defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (quoting *Bryant*, 530 F.3d at 1374).

Adjudicating a motion to dismiss for failure to exhaust administrative remedies involves two steps. *See Turner*, 541 F.3d at 1082. First, the court looks to the factual allegations in the defendant's motion, and those in the plaintiff's response. *See id*. If they conflict, the court accepts the plaintiff's version as true. "If,

in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*; *see also Bryant*, 530 F.3d at 1373-74.

If the complaint is not subject to dismissal at the first step, in which the plaintiff's allegations are assumed to be true, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id*. Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies.

### C. The Bureau of Prisons' Administrative Grievance Procedure

The federal Bureau of Prisons provides a four-level administrative grievance procedure—the Administrative Remedy Program—for prisoner complaints. 28 C.F.R. §§ 542.10 - 542.19. Initially, prisoners must seek resolution of issues through informal grievances by presenting the issue to prison staff. *Id.* at § 542.13(a). If unsuccessful, an inmate may then file a "formal written Administrative Remedy Request" ("BP-9" form) with designated prison staff. *Id.* at 542.14(a). Completion of the informal grievance and submission of the formal written Administrative Remedy Request to the designated staff member must occur within "twenty calendar

days following the date on which the basis for the Request occurred." *Id.* This twenty-day deadline may be extended when there is a "valid reason for delay." *Id.* at 542.14(b). Valid reasons for delay include "an extended period in-transit during which the inmate was separated from documents needed to prepare the request or appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempt; an indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 . . . was delayed." *Id.* The regulations provide that a prisoner should submit written verification from staff of any claimed reason of delay that cannot be verified through the SENTRY system.[2]

Once an inmate submits a formal written Administrative Remedy Request, the warden has twenty calendar days to respond to the Request. *Id.* at § 542.18. If the prisoner is dissatisfied with the warden's response at the institutional level, he may appeal to the Regional Director. *Id.* at 542.15(a). The prisoner has twenty calendar days from the date of the warden's response to file his Appeal with the Regional

---

[2] The Bureau of Prison maintains an electronic database called SENTRY that tracks administrative formal written Administrative Remedy Requests/Appeals filed by inmates. (Doc. 18-1 at p. 1, ¶ 2). The database contains all records of all Administrative Remedy Requests/Appeals filed by inmates, the dates thereof, and the dispositions of the Request/Appeal. (*Id.*).

Director, but this deadline may be extended for the reasons set forth above. *Id.* Once an Appeal has been submitted to the Regional Director, the Regional Director has thirty calendar days to respond. 28 C.F.R. § 542.18. Finally, an inmate may appeal the Regional Director's response to the General Counsel for the BOP. *Id.* Exhaustion of BOP administrative remedies generally entails taking each of these steps. *See Woodford*, 548 U.S. at 90, 126 S. Ct. at 2385 (noting that proper exhaustion "means using all steps that the agency holds out, and doing so *properly*"); *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005) (holding that a prisoner must "properly take each step within the administrative process" in order to exhaust his administrative remedies) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002)).

Additionally, BOP regulations state some formal requirements for Appeals. For instance, an inmate must use the BP-11 Form for his final appeal to the General Counsel. Furthermore, the inmate must submit "one complete copy or duplicate original of the institution and regional filings and their responses." *Id.* at 542.15(b). If more space is needed, the inmate may use a continuation page. The inmate also must provide three additional copies of the continuation page and exhibits to the central office in his final Appeal. *Id.* at 542.15(b)(3).

The regulations provide guidance regarding resubmission of a Request or Appeal that was rejected for failing to meet any requirement of the exhaustion process. The regulation provides:

> a. Rejections. The Coordinator at any level . . . may reject and return to the inmate without a response a Request or an Appeal that . . . does not meet any other requirement of this part.
>
> b. Defects. When a submission is rejected, the inmate shall be provided a written notice, signed by the Administrative Remedy Coordinator, explaining the reason for the rejection. If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal.

28 C.F.R. § 542.17(a), (b).

Additionally, the BOP's implementing instructions indicate that "[d]efects such as failure to sign a submission, failure to submit the required copies of a Request, Appeal, or attachments, or failure to enclose the required single copy of lower level submissions are examples of correctable defects." (Doc. 18-1 at 13). The regulation further provides that exhibits will not be returned with the responses, thus the inmate should retain a copy of all his exhibits for his or her personal records. 28 C.F.R. § 542.14(c)(3).

### D. Plaintiff's Allegation that BOP Thwarted His Attempts to Exhaust His Administrative Remedies

Candelario denies that he failed to exhaust his administrative remedies, but he argues that unnamed BOP personnel thwarted his attempts to exhaust his administrative remedies. (Doc. 21 at 5).

The PLRA requires inmates to exhaust only those administrative remedies that are made available to them. *Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1859 (2016); *Does 8-10 v. Snyder*, __ F.3d __, 2019 WL 6885327, at *1 (6th Cir. 2019); *Booth v. Allen*, 758 F. App'x 899, 901 (11th Cir. 2019); *Pavao v. Sims*, 679 F. App'x 819, 823 (11th Cir. 2017). "The PLRA's exhaustion requirement "hinges on the 'availab[ility] of administrative remedies." *Ross*, 136 S. Ct. at 1858. In other words, "a remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner*, 541 F.3d at 1084 (quoting *Goebert v. Lee Cty.*, 510 F.3d 1312, 1322-23 (11th Cir. 2007)); *see Ross*, 136 S. Ct. at 1858-59. In *Ross*, the Supreme Court recognized three circumstances in which an administrative remedy, although officially on the books, is not available to an inmate to obtain relief. 136 S. Ct. at 1859; *Pavao*, 679 F. App'x at 823.

First, a remedy is unavailable when "it operates as a simple dead end" because prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates." *Pavao*, 679 F. App'x at 823 (citing *Ross*, 136 S. Ct. at 1859);

*Turner*, 541 F.3d at 1083 (noting that the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . that they will refuse to abide by the established ones").

Second, a remedy is unavailable if the grievance process is "so opaque that it becomes, practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1859. This occurs when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* In other words, "[r]emedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." *Pavao*, 679 F. App'x at 823 (citing *Turner*, 541 F.3d at 1084).

Finally, an administrative remedy is unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 135 S. Ct. at 1859.

Sims concedes that BOP's SENTRY system indicates that Candelario filed eight administrative remedy submissions and that five of these relate to "staff misconduct" and Candelario's placement in a "dry cell,"[3] which this court will assume entailed allegations that Sims sexually and physically assaulted Candelario. (Docs. 18 at 9, 18-1 at p.3 ¶ 6).

---

[3] A dry cell is a cell that lacks water (*i.e.*, no water in the sink, toilet, or shower) (Doc. 1 at 14); *see also Thomas v. Tice*, 943 F.3d 145, 148 (3d Cir. 2019).

On November 30, 2016, Candelario's initial Administrative Remedy Request was logged as received. (Doc. 18-1 at p. 2 ¶ 7, p. 26). This Request was assigned Remedy ID: 884079-F1. (*Id.*). The record indicates that this Request was denied on December 19, 2016. (*Id.*).

On January 19, 2017, Candelario's Appeal of the institutional level decision was logged as received by the Regional Office. (Doc. 18-1 at p. 2 ¶ 8, p. 28). This Appeal was assigned Remedy ID: 884079-R1. (*Id.*). The record indicates that on February 13, 2017, the Regional Director responded to Candelario's Appeal. (*Id.*). The Regional Director informed Candelario that "if [you are] dissatisfied with this response, you may appeal to the Office of General Counsel, Bureau of Prisons." (Doc. 21 at p. 7).

On April 10, 2017, Candelario's BP-11 Appeal of the Regional Director's decision was logged as received by BOP's Office of the General Counsel. (Doc. 18-1 at p. 3 ¶ 9, p. 30). This Appeal was assigned Remedy ID: 884079-A1. (*Id.*). The General Counsel rejected this Appeal because Candelario failed to comply with procedural rules insofar as he "only provided two original BP-11 Pages, also [Candelario] provided only one copy of continuation page." (Doc. 18-1 at p. 30).[4]

---

[4] The regulations provide that an Appeal to the General Counsel:

> [S]hall be submitted on the form designed for Central Office Appeals (BP-11) and accompanied by one complete copy or duplicate original of the institution and regional filings and their responses. . . .

The General Counsel informed Candelario of the rejection and advised Candelario to correct the deficiencies and resubmit his Appeal. (Doc. 18-1 at p. 3 ¶ 9).

Candelario resubmitted his Appeal and on May 24, 2017, Candelario's resubmitted Appeal was logged as received by the General Counsel. (Doc. 18-1 at p. 3 ¶ 10, p. 32). This Appeal was assigned Remedy ID: 884079-A2. (*Id.*). The General Counsel rejected this Appeal because Candelario failed to comply with procedural rules. Specifically, the record stated that the Appeal was rejected because Candelario failed to provide the continuation page to his BP-11 Form and failed to provide the BP-9 Form (his initial Administrative Remedy Request) and the Warden's response to the initial Administrative Remedy Request. (Doc. 18-1 at p. 32). The General Counsel advised Candelario of the rejection and instructed him how to correct the deficiencies and resubmit his Appeal. (Doc. 18-1 at p. 3 ¶ 10).

On July 7, 2017, Candelario's second resubmission of his Appeal was logged as received by the General Counsel. (Doc. 18-1 at p. 3 ¶ 11, p. 34). This Appeal was assigned Remedy ID: 884079-A3. (*Id.*). The General Counsel rejected this Appeal

---

(3) An inmate shall complete the appropriate form with all requested identifying information and shall state the reasons for the Appeal in the space provided on the form. If more space is needed, the inmate may use up to one letter-size (8 ½" x 11") continuation page. The inmate shall provide . . . three additional copies with an Appeal to the Central Office.

28 C.F.R. § 542.15(b)(1), (3).

because Candelario again failed to comply with procedural rules. (Doc. 18-1 at p. 34). Specifically, the SENTRY record indicates that it was rejected for the "same issues as noted in previous rejection. Please seek unit team assistance if necessary." (*Id.*). The General Counsel advised Candelario of the rejection and advised him how to correct and resubmit his Appeal. (Doc. 18-1 at p. 3 ¶ 11).

Candelario did not resubmit his Appeal after this last rejection. (Doc. 18-1 at p. 3 ¶ 11; Doc. 21 at p. 4 ¶ 8). Sims argues that because Candelario failed to resubmit his appeal after the last rejection, Candelario failed to exhaust his administrative remedies.

Candelario maintains that he attempted to comply with the Administrative Remedy Program procedures, but that the BOP "always" rejected his submissions for deficiencies. (Doc. 21 at p. 2 ¶ 3). He alleges that his failures to comply with the procedural rules were due to mail being delayed and his inability to provide documents because BOP personnel never returned these documents to him. (*Id.* at ¶¶ 4, 9). Additionally, Candelario asserts that he received the final rejection from the General Counsel after the deadline to resubmit his appeal. (*Id.* at p. 4 ¶ 8). Candelario also alleges that staff did not offer any assistance to resubmit his appeal and he was afraid to request help because he was harassed by staff. (*Id.*).

Based on this record, there is conflicting evidence regarding whether BOP made administrative remedies available to Candelario. At step one of the *Turner*

analysis, this court must accept Candelario's allegations that the grievance procedure was unavailable. Accordingly, Sims is not entitled to dismissal at step one, and the court must proceed to step two of the *Turner* analysis and resolve the factual dispute.

Turning first to Candelario's argument that documents were not "returned" or were stolen by prison staff. Candelario does not allege that he filed a completed BP-11 Form and attachments. Nor does he name any particular prison staff member who interfered with his administrative process. He merely makes a conclusory accusation that the missing pages were taken by prison staff or, in the alternative, that he could not supply the documents because the documents "had not been returned." (Doc. 4). The relevant BOP regulation specifically informs inmates that exhibits attached to the appeal or grievance will not be returned. 28 C.F.R. § 542.14(c)(3). The regulation, therefore, instructs inmates to retain a copy of the relevant documents. *Id.* To the extent Candelario's allegations indicate that an exhibit was not returned with the rejections—thus precluding him from attaching it for resubmission—this does not indicate that BOP personnel interfered with Candelario's ability to pursue administrative remedies.

Next, Candelario alleges that the BOP delayed delivery of his mail.[5] (Doc. 21 at 2). For purposes of the motion to dismiss, this court will presume that the BOP

---

[5] Plaintiff does not allege specifically what was delayed (i.e. his grievances/appeals or the responses from BOP staff), how long these documents were delayed, or when they were tardy.

was tardy in providing Candelario his mail. This tardiness, however, is of no moment to this civil action because none of Candelario's grievances or appeals was denied due to untimeliness. (Doc. 18-1 at ¶¶ 8-12). BOP's alleged delay in providing Candelario his mail, therefore, apparently is irrelevant.

To the extent that Candelario is arguing that he received the General Counsel's third rejection after the expiration of the deadline to resubmit his Appeal,[6] the relevant regulations provide that BOP officials can extend deadlines for grievances and Appeals for a "valid reason." 28 C.F.R. §§ 542.14(b), 542.15(a). A valid reason includes an "extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal" and "an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal." (*Id.*). It appears that Candelario was aware that he could submit a corrected grievance late insofar as he notes his attempt to "resurrect his administrative remedies rights." (Doc. 21 at 4). But Candelario does not allege that his attempt to resurrect his administrative remedies included filing an out-of-time grievance or seeking an extension of the deadline to file. Therefore, he did not exhaust his administrative remedies as required by the PLRA. *See* 28 C.F.R. § 542.15(a) (permitting inmates to file an out of time appeal for a "valid reason"); *see also*

---

[6] Plaintiff did not attach the final rejection to his response. Additionally, Plaintiff has not stated when he received the final rejection, when he was required to resubmit his appeal, or when he was transferred to another prison.

*Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (per curiam) ("Since appellant has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies [under the PLRA]."); *Forde v. Miami Fed. Dept. of Corr.*, 730 F. App'x 794, 800 (11th Cir. 2018) (remanding to the district court to determine whether the plaintiff exhausted and specifically "whether an extension [to file a grievance]—under the circumstances—would have been available to Mr. Forde under § 542.14(b)"); *Flores v. Lappin*, 580 F. App'x 248, 250 (5th Cir. 2014) (affirming dismissal for lack of exhaustion because the "BOP regulations provide for an extension of filing times if an inmate can demonstrate a valid reason," which the plaintiff failed to do).

Candelario contends that he did not attempt to resubmit his Appeal because he was "harassed," and his unit team did not offer him any help. (Doc. 21 at 4). But Candelario does not offer any specific facts to support his conclusory allegation that "harassment" prevented him from refiling his Appeal. For example, Candelario does not specify what kind of "harassment" prevented him from resubmitting his Appeal, nor does he identify the BOP personnel who allegedly harassed him. He also does not state the dates that this harassment allegedly occurred.

Harassment by BOP personnel does not make administrative remedies "unavailable" to an inmate unless it: (1) actually deterred the plaintiff "from lodging a grievance or pursuing a particular part of the process;" and (2) the harassment was

such that it "would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Turner*, 541 F.3d at 1085; *Hemphill,* 380 F.3d at 688; *Smith v. Mosley,* 532 F.3d 1270, 1277 (11th Cir. 2008). Candelario's conclusory statement that harassment prevented him from exhausting his administrative remedies does not include sufficient facts for a court to conclude that the harassment was of such a nature as to deter a reasonable inmate. Accordingly, Candelario has not established that BOP denied him access to administrative remedies. The record establishes that Candelario failed to exhaust his administrative remedies and that Candelario has no legitimate excuse for this failure. Under the PLRA, therefore, the district court should dismiss this civil action.

### III.  Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. Defendant Joseph Sims's Motion to Dismiss for Failure to Exhaust Administrative Remedies (Doc. 18) be **GRANTED**.

2. Plaintiff Peter Candelario's claim against Sims be **DISMISSED** for failure to exhaust administrative remedies.

3. The clerk of the court be directed to close this case file.

At Panama City, Florida, this <u>31st</u> day of December, 2019.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.